924 So.2d 855 (2006)
Atilla EAGLEMAN, M.D. and Atilla Eagleman, M.D., P.A., Appellants,
v.
Luke KORZENIOWSKI, Jennifer Korzeniowski and Derik Korzeniowski, Appellees.
No. 4D04-2169.
District Court of Appeal of Florida, Fourth District.
February 15, 2006.
Rehearing Denied April 19, 2006.
*856 Robert E. Biasotti, Annette M. Lang and Sylvia H. Walbolt of Carlton Fields, P.A., St. Petersburg, for appellants.
Edna L. Caruso and Diran V. Seropian of Edna L. Caruso, P.A., West Palm Beach, and Christian D. Searcy and David J. White of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellees.
ROTHSCHILD, RONALD J., Associate Judge.
Jennifer and Derik Korzeniowski, individually and on behalf of their son, Luke Korzeniowski, filed a complaint in medical malpractice against Dr. Atilla Eagleman, Atilla Eagleman, M.D., P.A., and Bethesda Memorial Hospital, Inc., for causing neurological injuries to Luke. The jury returned a verdict in favor of the Korzeniowskis. Eagleman raises three issues on appeal, none of which are preserved for appellate review. We affirm and take this opportunity *857 to write to remind trial counsel of the necessity of a proper objection to preserve issues for appellate review.
The Korzeniowskis alleged the following:
1. That Eagleman was employed by Bethesda and was the agent of Bethesda;
2. That Eagleman entered into a consent agreement with the Agency for Healthcare Administration (AHCA) in a case involving medical malpractice, misrepresentations in the practice of medicine, and failure to keep written medical records justifying a course of treatment;
3. That the consent agreement provided notice to Bethesda that it should have supervised and monitored Eagleman;
4. That Bethesda failed to select and retain competent medical staff members by granting staff privileges to Eagleman;
5. That Jennifer Korzeniowski was under Eagleman's care at Bethesda;
6. That Eagleman caused injury to Luke Korzeniowski's brain; and
7. That Eagleman failed to appropriately evaluate fetal descent, negligently used forceps during delivery, and negligently induced labor.
Bethesda filed an answer to the Korzeniowskis' complaint. Bethesda denied that Eagleman was an agent of Bethesda. Bethesda also raised seven affirmative defenses, including an affirmative defense seeking the apportionment of fault through comparative negligence.
Eagleman and Eagleman, M.D., P.A. also filed an answer to the Korzeniowskis' complaint. Eagleman admitted that he was an agent of Bethesda in one paragraph of the answer but denied that he was an agent of Bethesda in another paragraph of the answer. Eagleman raised six affirmative defenses.
Bethesda subsequently filed a Motion for Partial Summary Judgment. Bethesda asserted that undisputed evidence established that Eagleman was not an agent of Bethesda and that Jennifer Korzeniowski signed a statement acknowledging that physicians are not agents of Bethesda. Bethesda further claimed that the only relationship between Eagleman and Bethesda was a grant of staff privileges and that such did not create vicarious liability based on Insinga v. LaBella, 543 So.2d 209 (Fla.1989). The motion was denied by the trial court.
Before opening statements at the jury trial, the trial court and parties discussed Eagleman's motion in limine and objection related to the prior AHCA complaint against him.
During opening arguments, the Korzeniowskis' counsel used blowups of the AHCA complaint, consent agreement, and final order when explaining this past incident involving Eagleman to the jury. Eagleman did not object to these blowups or the related discussion of the AHCA documents. The AHCA documents were ultimately admitted into evidence during the trial, and Eagleman's counsel did not object to their admission or request a curative instruction.
The Korzeniowskis called a physiatrist, Dr. Lichtblau, to testify. Dr. Lichtblau was called upon to estimate the expenses that would be incurred for Luke Korzeniowski's care throughout his life and addressed government aid in his testimony on cross-examination.
Eagleman's counsel later called a medical doctor, Dr. Nathanson-Lippitt, who specializes in developmental neurology and pediatric rehabilitation, and who conducted an IME on Luke Korzeniowski. Dr. *858 Nathanson-Lippitt testified on direct examination regarding the availability of governmental aid and a discussion between counsel and the trial court ensued relating to government services in Hawaii, where the Korzeniowskis were considering moving. The trial court sustained the Korzeniowskis' objection relating to Dr. Nathanson-Lippitt's testimony, as it was new information not previously disclosed nor contained in her report.
A hearing was held on a motion for directed verdict filed by Bethesda, at which time Bethesda's counsel asserted that a directed verdict was appropriate because Eagleman was not an agent of Bethesda and because the evidence did not establish corporate negligence on Bethesda's part for failure to properly supervise Eagleman. Eagleman's counsel indicated that Eagleman was not involved with the motion for directed verdict and would not be taking a position on the motion. The trial court denied Bethesda's motion for directed verdict on the corporate negligence issue and reserved ruling on Bethesda's motion for directed verdict on the agency issue until after the jury verdict.
Bethesda renewed its motion for directed verdict at the close of the defense case. The trial court declined to rule on the motion at the time. Bethesda also renewed its motion for directed verdict at the close of evidence, and the trial court renewed its ruling.
The trial court and counsel then considered proposed jury instructions, including Bethesda's request for a comparative negligence jury instruction. The trial court rejected the proposed jury instruction. The trial court then instructed the jury regarding the agency issue and the corporate negligence issue. Eagleman did not object to either of these instructions.
The jury found that Eagleman was negligent, that Eagleman was an agent of Bethesda, and that Bethesda was negligent. The jury found that the present value of Luke Korzeniowski's future medical expenses was $30,000,000 and that his other compensatory damages amounted to $17,000,000. Jennifer and Derik Korzeniowski were awarded $2,000,000 in medical expenses. The jury then determined that Luke Korzeniowski suffered a permanent total disability and awarded Jennifer and Derik Korzeniowski $7,000,000 each in damages for loss of consortium.
Following the trial, Bethesda filed a Motion for Renewed Directed Verdict. Bethesda reasserted that a directed verdict was appropriate because Eagleman was not an agent of Bethesda and the evidence failed to establish corporate negligence on Bethesda's part. Bethesda also filed a Motion for Judgment Notwithstanding Verdict focusing on the same grounds. Bethesda additionally filed a Motion for New Trial. In it, Bethesda alleged a multitude of errors, including that the trial court improperly precluded the jury from apportioning fault between Eagleman and Bethesda, that the trial court improperly precluded evidence of free medical care available to the Korzeniowskis, and that the trial court improperly denied Bethesda's motions for summary judgment and directed verdict.
The trial court then entered a written order on Bethesda's motion for directed verdict regarding agency. The trial court noted that Bethesda moved for directed verdict at the close of the plaintiffs' case, at the close of the defense's case, and at the close of evidence, and that the trial court deferred ruling on the matter at each time. The trial court then concluded that Eagleman was merely a member of Bethesda's staff and not an agent of Bethesda, so that Bethesda was not vicariously liable for Eagleman's actions. The *859 trial court granted Bethesda's motion for directed verdict.
The trial court then entered three final judgments against Eagleman and Eagleman, M.D., P.A., one for each of the Korzeniowskis. This appeal and cross-appeal ensued (although the Korzeniowskis raised no issues on cross-appeal).
The issues raised on appeal are as follows:
A. THE TRIAL COURT ERRED BY FAILING TO RULE EITHER BEFORE OR DURING TRIAL THAT EAGLEMAN WAS NOT AN AGENT OF THE HOSPITAL AND ERRONEOUSLY INSTRUCTED THE JURY ON THAT ISSUE.
B. THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE THAT THE KORZENIOWSKIS WERE ENTITLED TO RECEIVE FREE GOVERNMENT SERVICES FOR CERTAIN FUTURE DAMAGES THEY CLAIMED.
C. THE TRIAL COURT ERRED BY FAILING TO EXCLUDE EVIDENCE OF EAGLEMAN'S PRIOR DISPUTE WITH AHCA IN AN UNRELATED MATTER.
This Court is unable to review these issues because they were not preserved for appellate review. For an issue to be preserved by a defendant in a case involving co-defendants, that defendant must object or that defendant must join in the objection of the other defendant. See Jorquera v. State, 868 So.2d 1250, 1252 (Fla. 4th DCA 2004); see also So. Puerto Rico Sugar Co. v. Tem-Cole, Inc., 403 So.2d 494, 495 (Fla. 4th DCA 1981)("Our analysis impels us to hold that appellant is subject to the general rule which precludes a party from complaining on appeal of errors which were not raised or objected to in the trial court.").
As to Eagleman's claim that the trial court erred by failing to rule on the agency issue, this issue is not preserved for appellate review. Both the motion for directed verdict and the proposed jury instruction on agency were filed by Bethesda. Eagleman did not join in the motion for directed verdict, object to the fact that a directed verdict was not granted or that the trial court reserved ruling on the matter, object to the trial court's handling of the agency issue, or object to the proposed jury instructions. In fact, Eagleman's counsel indicated that Eagleman was not involved with the motion for directed verdict and would not be taking a position on the motion. Essentially, Eagleman's argument on appeal is that although he took no position when the agency issue was before the trial court, he now believes that the trial court erred by reserving ruling on the motion for directed verdict and should have granted the directed verdict during trial (even though not granting the directed verdict was advantageous to Eagleman at that time). Furthermore, now that the trial court granted the directed verdict post-trial, Eagleman is taking a position on the motion for directed verdict and arguing that granting it was error because it is no longer advantageous to Eagleman. If it was important to Eagleman that a directed verdict be granted (or denied) to resolve the agency issue and remove the risk of any negative impact from the post-trial resolution of that issue, it was incumbent upon Eagleman to seek to secure a ruling on that issue prior to the jury verdict. It defies logic for a party to expect to be able to take no position on an issue in the trial court and then take whatever position is most advantageous to it on appeal; a party must take some position below in order for this court to review how the trial court ruled on that position. See Brazill v. State, 845 So.2d 282, 290 (Fla. *860 4th DCA 2003)("The requirement of an objection at trial avoids `the creation of "gotchas" whereby the defense is allowed to sit on its rights, saying nothing until after it sees whether the jury returns an adverse verdict.'") (citation omitted).
As to Eagleman's claim that the trial court erred by excluding evidence regarding free government services for future damages, this issue is not preserved for appellate review. In order to be preserved for appellate review, the specific argument made on appeal must have been raised when the party objected in the trial court. See Centex-Rooney Constr. Co. v. Martin County, 706 So.2d 20, 27 (Fla. 4th DCA 1997)(citing Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982)). At trial, Eagleman asserted that the Korzeniowskis' cross-examination of Dr. Nathanson-Lippitt opened the door for her to testify about the availability of governmental aid in Hawaii. However, the argument raised on appeal is that the door was opened for Dr. Nathanson-Lippitt's testimony regarding the services available in Hawaii by the cross-examination questioning (by Eagleman's counsel) of Dr. Lichtblau regarding the services that Luke Korzeniowski had obtained in the past. Therefore, the specific issue raised on appeal was not raised in the trial court, because the two arguments presented involved different bases for the door opening to admission of the evidence.
Finally, as to the issue regarding the trial court's failure to exclude evidence of Eagleman's prior AHCA complaint, this issue is not preserved for appellate review. Although Eagleman objected to the use of the AHCA records prior to the opening argument in which they were used, the trial court did not rule on their admissibility at that time and instructed Eagleman's counsel that when it did rule he could request a curative instruction. Then when the documents were ultimately admitted into evidence, Eagleman's counsel indicated that he had no objection to their admission and did not request a curative instruction. As such, Eagleman did not secure a ruling regarding his initial objection, and when a ruling was made, indicated that he had no objection, thereby abandoning his previous objection.
Accordingly, by Eagleman's failure to raise objections at trial, he deprived the trial court of the opportunity to make substantive rulings on the very issues he now raises in this appeal. Consequently, the jury verdict and final judgment are AFFIRMED.
Affirmed.
POLEN and MAY, JJ., concur.